## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-01088-TWP-TAB |
| | ) | |
| JOHN DOE DEPUTIES, | ) | |
| KERRY J. FORESTAL, | ) | |
| MARION COUNTY SHERIFF'S OFFICE, | ) | |
| CORECIVIC, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Kerry J. Forestal ("Sheriff Forestal") and the Marion County Sheriff's Office (collectively "the MCSO") (Dkt. 119), and two Motions for Summary Judgment filed by Defendant CoreCivic, Inc. ("CoreCivic") (Dkts. 121, 123). When he was incarcerated by MCSO, Plaintiff Christopher Hobbs ("Hobbs") had a seizure and fell from his bunk, suffering a traumatic brain injury. He has sued the MCSO and Sheriff Forestal, as well as CoreCivic, which is the contractor providing day-to-day operations for the MCSO, under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983. For the reasons explained in this Order, the MCSO's motion for summary judgment is **granted in part and denied in part** and the motions filed by CoreCivic are **granted**.

### I.    STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment,

the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.  FACTUAL BACKGROUND

Because the Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Hobbs, the non-moving party and draws all reasonable inferences in Hobbs' favor. *Khungar*, 985 F.3d at 572–73.

Hobbs was diagnosed with epilepsy in 2014 or 2015. (Dkt. 130-2). He suffers from grand mal seizures when he sleeps. *Id.* at 9. When he tried the medication Keppra, he had eight to ten seizures per week but had success with the medication Gabapentin. *Id.* People with epilepsy should

not sleep in elevated beds because of the risk of falling during a seizure or the confusion that results. (Dkt. 130-4 at 31).

In 2017, inmates of the MCSO were held either at Jail I, located at 40 S. Alabama Street in Indianapolis or Jail II, located at 730 E. Washington Street. *Cf.* (Dkt. 119-1 ¶ 9). In September of 2017, before the incident at issue in this case, Hobbs was incarcerated at Jail II, where he had a clinic visit with Nurse Practitioner John Reynolds ("NP Reynolds") for his seizures. (Dkt. 130-1 at 44-47). During prior incarcerations at other facilities, Hobbs had been assigned a bottom bunk. (Dkt. 127-2 at 4). He had previously fallen off of a top bunk at both Jail I and Jail II before the incident in this case, but did not sustain serious injuries on those occasions. *Id.* at 5.

Hobbs was arrested on July 17, 2021, and transported to the Jail I. (Dkt. 119-1 ¶ 9. He was transferred to Jail II the next day. *Id.* Jail II was operated by CoreCivic under an operating agreement with the MCSO. (Dkt. 119-1 ¶ 10). This agreement required CoreCivic to manage the facility by developing policies, programs, and procedures, and managing security at Jail II. *Id.* ¶ 6, 11; (Dkt. 119-1 at 8). This also included hiring and overseeing personnel, training employees, and providing health services. (Dkt. 119-1 at 9-11). CoreCivic policies include initial health screenings, which include screening for conditions like seizures. (Dkt. 119-1 at 50 (Core Civic Policy 13-50). While he was at Jail II, Hobbs saw other inmates with seizure disorders such as epilepsy assigned to top bunks. (Dkt. 130-2 at 10).

When Hobbs was transferred to Jail II, he told CoreCivic staff that he has epilepsy and that the medication Keppra actually induces his seizures. (Dkt. 127-2 at 7). He also stated that he should not be placed on a top bunk because of the possibility he could have a seizure. *Id.* Nonetheless, Hobbs was assigned a top bunk. *Id.*

NP Reynolds examined Hobbs before his fall. (Dkt. 130-1 at 3). NP Reynolds explains that CoreCivic assigns a bottom bunk in two situations: 1) if an inmate is going through withdrawals; and 2) if the doctor or NP Reynolds ordered the bunk because of a medical condition. *Id.* at 4 NP Reynolds described this decision-making as "an informal rule." *Id.* Under this informal rule, an inmate would be given a bottom bunk if an inmate had a "current seizure disorder" and is taking medication or if NP Reynolds could validate that the inmate was on medications. *Id.* at 7. When asked if past medical records are considered, NP Reynolds stated:

> Yes and no. I mean, if they had a – you know, usually looking at something physical versus if they had something in the past that warranted – like, for example, the seizure, that would be an example. But they'd have to have – you know, determine what caused the seizure, that kind of thing.

*Id.* at 8). Once NP Reynolds or the doctor orders a bottom bunk, the order is given to a nurse who notifies the head of security to make sure that the bottom bunk is available for the inmate. *Id.* at 4-5. Security then handles the bunk assignment. *Id.* at 5.

Hobbs had a seizure on August 13, 2021, and fell from his bunk. (Dkt. 127-2 at 7). (He suffered a traumatic brain injury that required emergency surgery. *Id.* at 3.

## III.  DISCUSSION

Hobbs' Amended Complaint brings claims under the Eighth and/or Fourteenth Amendment, 42 U.S.C. § 1983, and *Monell* against the Defendants, as well as violations of the ADA, and the Rehabilitation Act.  MCSO argues the claims against it should be dismissed because Hobbs previously admitted in judicial proceedings that the MCSO is not liable for any claims arising out the incident. MCSO also argues it is entitled to summary judgment because CoreCivic was responsible for the daily operational control over Jail II, the facility where Hobbs was injured.

CoreCivic argues that it is entitled to summary judgment because it was not deliberately indifferent to Hobbs' condition and did not have any policy, practice or custom that cause any

alleged Constitutions deprivation of Hobbs rights. The Court will first address MCSO's motion, before turning to CoreCivics motions.

**A. The MCSO**

The MCSO seeks summary judgment on Hobbs's claims arguing that it is not liable for the injuries he suffered at Jail II.

**1. Judicial Admission**

First, the MCSO argues that Hobbs has already admitted in a filing in this Court, that the MCSO is not liable for any claims arising out of his fall at Jail II. Earlier in this case, the MCSO sought summary judgment on the same arguments it raises here. (Dkt. 79). In his Response in Opposition to MCSO's prior Motion for Partial Summary Judge, (Dkt. 83), Hobbs acknowledged

> that the facts developed in discovery show that CoreCivic, and not MCSO, were responsible for the operation and medical care at Jail II at the time of his fall from a top bunk. Therefore, Plaintiff does not dispute that MCSO is entitled to partial summary judgment as to his claims for injuries sustained in his fall off the top bunk at Jail II.

(Dkt. 83 at 10). Hobbs later moved for leave to file an amended response to the motion for summary judgment to withdraw that acknowledgement, but the Magistrate Judge denied that request. (Dkt. 102, 107). The MCSO's motion for summary judgment was later denied without prejudice in light of the stay pending former defendant Wellpath's bankruptcy. (Dkt. 108).

The MCSO has renewed its motion for summary judgment and argues that because Hobbs previously agreed that MCSO is entitled to summary judgment on this point, he is precluded from opposing the motion for summary judgment now. While the MCSO argues that Hobbs made a judicial admission on this point, "[a] judicial admission is a statement… that negates a **factual claim** that the party making the statement might have made or considered making." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010) (emphasis added). Legal

5

conclusions are not binding as judicial admissions. *Dabertin v. HCR Manor Care, Inc.*, 68 F. Supp. 2d 998, 1000 (N.D. Ill. 1999) (citing cases). Here, Hobbs still does not dispute that the MCSO was not directly responsible for the operation and medical care at Jail II at the time of his fall. And, to the extent that he previously conceded the legal consequence of this fact, that concession is not binding.

### 2. Merits of Hobbs ADA and Rehabilitation Act Claims

The MCSO next argues that it should not be held liable for Hobbs's fall under either the ADA, the Rehabilitation Act, or the Eighth Amendment because it was not responsible for the day-to-day operations of Jail II. The MCSO argues that it cannot be held liable under the ADA and the Rehabilitation Act because CoreCivic, not the MCSO, managed the daily operations at Jail II.

The ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities **of a public entity**, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (emphasis added). A "public entity" is "any State or local government, department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(1). "The Rehabilitation Act, 29 U.S.C. § 701 et seq., applies to federal government agencies as well as organizations that receive federal funds." *Wisconsin Comm. Svcs., Inc. v. City of Milwaukee*, 465 F.3d 737, 746-47 (7th Cir. 2006). Because a plaintiff can have only one recovery, these claims should be construed together. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

The MCSO does not argue that it is not a public entity under the ADA or that does not receive federal funds under the Rehabilitation Act. Instead, it argues that it should not be held

liable under these statutes because it did not run Jail II. But another judge of this court has found that a public entity–in that case the Indiana Department of Correction–can be liable for violating the ADA or Rehabilitation Act based on acts of its contractor. *McIntosh v. Corizon*, No. 214CV00099JMSMJD, 2018 WL 1456229, at *7 (S.D. Ind. Mar. 23, 2018). This is because an entity "may not avoid the responsibility to provide services to disabled prisoners by contracting away those obligations." *Id.* The MCSO seeks to distinguish *McIntosh* from this case by arguing that CoreCivic managed all day-to-day operations at Jail II. But that was the same issue in *McIntosh*. In that case, the Indiana Department of Correction argued that it could not be held liable under the ADA or Rehabilitation Act for the actions of the private contractor that provided medical care at its facilities. That is the exact claim here – that CoreCivic is a private contractor that manages Jail II. Thus, for the reasons explained in *McIntosh*, this Court finds that the MCSO can be held liable under the ADA and Rehabilitation Act for Hobbs's fall. So the Court will proceed with its analysis.

The MCSO argues that it is not liable under the ADA or the Rehabilitation Act because it was not deliberately indifferent to Hobbs's need for a lower bunk. To make an ADA claim, a plaintiff must show that: 1) he is a qualified individual with a disability; 2) he was denied the benefits of the services, programs, or activities of a public entity, or otherwise subjected to discrimination by such an entity; and 3) the denial or discrimination was by reason of his disability. *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 594 (7th Cir. 2023). Similarly, to state a claim under the Rehabilitation Act, a plaintiff must show that he is a qualified person with a disability, and the defendant denied him access to a program or activity because of his disability. *Jaros*, 684 F.3d at 672. If a plaintiff can show a violation of the ADA and/or Rehabilitation Act, he must show intentional discrimination to recover compensatory damages. *Strominger v. Brock*, 592 F. App'x

508, 511–12 (7th Cir. 2014) (citations omitted). The Seventh Circuit has not decided whether discriminatory animus or deliberate indifference is required to show intentional discrimination, but district courts in this Circuit have applied the deliberate indifference standard. *Boston v. Dart*, No. 14 CV 8680, 2016 WL 5373083, at *6 (N.D. Ill. Sept. 26, 2016) (citing cases). To demonstrate deliberate indifference, a plaintiff must show "'(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The MCSO argues that it was not deliberately indifferent to Hobbs's need for an accommodation because it contracted with CoreCivic to make these decisions. But this argument is simply a restatement of its previous argument that it should not be held liable because CoreCivic was responsible for the operation at the Jail. For the reasons already discussed, the MCSO cannot contract away its responsibilities under the ADA and Rehabilitation Act.

In reply in support of its motion for summary judgment, the MCSO argues that CoreCivic's actions do not amount to deliberate indifference. Because the MCSO raised this argument for the first time in reply, it is waived. *See Campos v. Cook Cnty.*, 932 F.3d 972, 976 (7th Cir. 2019). Further, even if this argument were not waived, Hobbs has presented sufficient evidence that he suffers from epilepsy, that he has seizures at night, and has fallen from a top bunk in the past because of those seizures. This is enough evidence to allow a jury to conclude that when Hobbs was denied a bottom bunk, officials were aware of a serious risk to him and disregarded that risk and therefore that he was discriminated against because of his disability.

The MCSO is not entitled to summary judgment on Hobbs's ADA or Rehabilitation Act claims.

### 3. Merits of Hobbs Eighth Amendment Claim

The MCSO next seeks summary judgment on Hobbs's Eighth Amendment claim, brought under 42 U.S.C. § 1983. Under the theory recognized in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality, like the MCSO, may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability. Instead, a municipality only may be held liable under § 1983 for constitutional violations caused by policy, practice, or custom of the municipality. *Id.* The MCSO argues that it had no custom, policy, or practice that resulted in the denial of Hobbs's rights. Conceding that the MCSO is entitled to summary judgment on this issue, Hobbs has identified no such policy. The MCSO is therefore entitled to summary judgment on Hobbs's Eighth Amendment claim.

The Court goes on to note that Hobbs has also brought a constitutional claim against Sheriff Forestal in his individual capacity. Although the MCSO Defendants do not directly seek summary judgment on the claim against Sheriff Forestal, they do seek summary judgment on the Eighth Amendment claims. Hobbs agrees that summary judgment is appropriate on this claim and has designated no evidence that Sheriff Forestal was personally involved in the alleged violation of his rights, a necessary requirement to support a claim under § 1983. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Based on Hobbs's agreement that CoreCivic was responsible for the operation of Jail II and the lack of evidence that Sheriff Forestal was personally involved in the acts at issue, the Court intends to grant summary judgment for Sheriff Forestal on this claim.

### B. CoreCivic

CoreCivic has filed two motions for summary judgment. In the first, CorCivic argues that, as a private corporation, Hobbs cannot hold it responsible for his injuries under *Monell*. In the

second, CoreCivic seeks summary judgment on Hobbs's claims under the ADA and the Rehabilitation Act.

### 1. *Monell*

CoreCivic, as a private corporation acting under color of state law, is treated as a municipality for purposes of § 1983 and can be sued when its actions violate the Constitution. *Dean v. Wexford Health Sources, Inc*., 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978)). "A municipality 'acts' through its written policies, widespread practices or customs, and the acts of a final decisionmaker." *Levy v. Marion Co. Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019). To state a *Monell* claim, Hobbs must identify an action taken by CoreCivic and allege a causal link between the municipality's action and the deprivation of federal rights. *Dean,* 18 F.4th at 235.

"Liability under this standard is difficult to establish, requiring a § 1983 plaintiff to prove that a municipality, either through an express policy or an implied policy of inaction, took deliberate action that was the moving force behind a constitutional injury." *Taylor v. Hughes*, 26 F. 4th 419, 435 (7th Cir. 2022) (cleaned up). Liability may attach in two circumstances: First, "if an express municipal policy or affirmative municipal action is itself unconstitutional, . . . a plaintiff has a straightforward path to holding the municipality accountable . . . [and] a single instance of a constitutional violation caused by the policy suffices to establish municipal liability." *Id*. (cleaned up). Second, a plaintiff may show "gaps in express policies or . . . widespread practices that are not tethered to a particular written policy—situations in which a municipality has knowingly acquiesced in an unconstitutional result of what its express policies have left unsaid." *Id*. (cleaned up). Under this theory, a plaintiff "must typically point to evidence of a prior pattern of similar constitutional violations" to "ensure that there is a true municipal policy at issue, not a random

event." *Id*. (cleaned up). Regardless of the exact form of proof, the question is always whether the municipal policy reflects a conscious disregard for a known or obvious risk of the constitutional deprivation. *Dean*, 18 F.4th at 237.

To support his *Monell* claim, Hobbs does not identify an express policy by CoreCivic that he contends is unconstitutional, but argues that CoreCivic's informal rule for assigning bottom bunks is inadequate to address the needs of inmates with seizure disorders. Hobbs relies on the Seventh Circuit decision in *Glisson v. Indiana Dep't of Correction*, 849 F.3d 372 (2017) (rehearing en banc). The prisoner in *Glisson* died in custody of complications relating to his many health conditions. *Id.* at 378. The court explained that he saw more than ten healthcare professionals for his chronic conditions during his incarceration, none of whom developed a treatment plan for him. *Id.* at 374. Reversing the district court's order granting summary judgment in favor of the IDOC's contracted medical provider, the court of appeals held that a jury could find that the medical provider had knowledge of the need for protocols for coordinated treatment for chronically ill inmates and nonetheless made the deliberate decision not to act to create a policy. *Id.* at 382. In other words, inaction can give rise to liability in some instances if it reflects "a conscious decision not to take action." *Glisson*, 849 F.3d at 381. If a municipality's action is not facially unconstitutional, the plaintiff "must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *Dean*, 18 F.4th at 235.

Here, the parties agree that CoreCivic relied on its medical personnel during intake screening to decide whether an incoming inmate should receive a bottom bunk. (Dkt. 130-1 at 3). Medical professionals regularly make decisions about inmate care and no reasonable jury could find that this policy of deferring to the medical professionals to make this decision is obviously

11

unconstitutional. *Cf. id.* (explaining that "in some "**rare**" cases, the risk of unconstitutional consequences from a municipal policy "could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations.") (emphasis added).

Hobbs further argues, however, that CoreCivic should nonetheless have been aware that this informal rule would cause constitutional deprivations because other inmates with seizure disorders had been placed on top bunks and because he had been placed in a top bunk on prior occasions. (Dkt. 127-2 at 10, 5)."[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Bohanon v. City of Indianapolis*, 491 F. Supp. 3d 367, 385 (S.D. Ind. 2020), aff'd, 46 F.4th 669 (7th Cir. 2022) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)). But Hobbs has not identified those inmates, stated how many other inmates with seizure disorders were placed in top bunks, or provided any other information about the circumstances of this placement. This evidence is not sufficient to allow a reasonable jury to conclude that CoreCivic's informal rule of allowing medical personnel to determine if an inmate had a medical need for a bottom bunk was a clearly unconstitutional policy that resulted in Hobbs's injuries. CoreCivic is entitled to summary judgment on this claim.

### 2. ADA and Rehabilitation Act Claim

CoreCivic also moves for summary judgment on Hobbs's claims against it under the Americans with Disabilities Act and the Rehabilitation Act. Because Hobbs does not oppose this motion, (Dkt. 129), and because there is no evidence that CoreCivic is a public entity under the ADA or receives federal funds as required for liability under the Rehabilitation Act, the motion is

granted. *See Akard v. Comm'r of Indiana Dep't of Correction*, No. 121CV02133JMSTAB, 2022
WL 20637859, at *3 (S.D. Ind. Jan. 11, 2022).

## IV.    CONCLUSION

For the reasons explained above, CoreCivic's Motions for Summary Judgment, Dkt. [121],
and Dkt. [123], are **GRANTED**. The MCSO's Motion for Summary Judgment, Dkt. [119], is
**GRANTED in part and DENIED in part**. The claim that remains is Hobbs's claim that the
MCSO denied him an accommodation under the ADA and Rehabilitation Act.

As discussed above, because there are insufficient allegations or evidence that Sheriff
Forestal was personally involved in any alleged violation of Hobbs's rights under 42 U.S.C. § 1983,
consistent with Rule 56(f) of the Federal Rules of Civil Procedure, the Court notifies Hobbs of its
intent to grant summary judgment in Sheriff Forestal's favor on Hobbs's constitutional claim.[1]
Hobbs shall have **14 days** to show why summary judgment should not be granted on this claim. If
nothing is filed by this deadline, this claim against Sheriff Forestal will be dismissed.

The **clerk shall terminate** CoreCivic as a defendant.

In addition, Hobbs was previously directed to effect service on the John Doe defendants or
risk dismissal. (Dkt. 135). Because Hobbs has not identified or effected service on these
defendants, the claims against them are dismissed and the **clerk shall** also terminate the John Doe
Defendants.

This matter is scheduled for jury trial on May 18, 2026 and final pretrial conference on
April 22, 2026. The parties are requested to meet with the Magistrate Judge for a settlement
conference at the Magistrate Judge's earliest convenience.

---

[1] After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant;
(2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying
for the parties material facts that may not be genuinely in dispute. *See* Federal Rule of Civil Procedure 56(f).

**IT IS SO ORDERED.**

Date: 2/11/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel